## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 25 2023

JEFFREY P. COLWELL
CLERK

Civil Action No. _____

(To be supplied by the court)

JILL COIT _____, Plaintiff

v.

**Jury Trial requested:**
(please check one)
___✓___ Yes _____ No

EXECUTIVE DIRECTOR ANDRE STENCIL AND JANE AND/OR JONH DOE(S) #1 AT
HEADQUARTERS (HQ) WHO MAKE ADMINISTRATIVE/POLICY DECISIONS; GOVERNOR
JARED POLIS; DR. RANDOLPH, DR. MAUL AND JANE AND JOHN DOE(S) #2 AT HQ
WHO MAKE MEDICAL & MENTAL HEALTH DECISIONS/POLICIES; DR. BUTLER,
GENDER DYSPHORIA COMMITTEE & JANE AND/OR JOHN DOE(S) #3; JANET SMITH, A.
JACOBSON-SANCHEZ & JANE AND/OR JOHN DOE(S)#4 WHO MAKE LEGAL AND AIC
POLICY/DECISIONS; WARDEN RYAN LONG, MAJOR GATES-FOUSE, MAJOR KEEGAN
FOWLER, MAJOR GARY LITTLE, MAJOR BRIAN SCOTT, CAPTAIN K. MESTAS, CAPTAIN
B. DONNELLY, LT. T. BOLDTON, LT SMITH WHO MAKE INCENTIVE UNIT POLICY/
DECISIONS JANE & JOHN DOE(S) # ; CAPTAIN CERBO, LT RAY, CAPTAIN JOHN SMITH
AND JANE AND JOHN DOE(S) # OF DWCF KITCHEN; OIG INVESTIGATORS,
DIRECTOR(S) SCOTT SMITH AND JANE AND/OR JOHN DOE(S)#8 AT HQ & DWCF;
DWCF MEDICAL HSA N. PRICE, N.P. DEB REILLY, N. P. HILLARY VICTOROFF AND
JANE AND JOHN DOE(S) # 9 MEDICAL STAFF AND NURSING; ERIC JACOBI, JASON
SMITH AND JANE AND/OR JOHN DOES # WHO MAKE RELIGIOUS DECISION/POLICIES
#10; DWCF DENTIST WILSON AND JANE AND/OR JOHN DOE(S) # ; CAPTAIN J.
BRACKNEY; FORMER SGT. JOSH LANG (DECEASED)
, DEFENDANT(S).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in
the space provided, please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names. The names listed in the above caption must be
identical to those contained in Section B. Do not include addresses here.)*

## PRISONER COMPLAINT (amended)

(1 A)

Unless a defendants name appears in this heading, they are not include as defendants. I named several people in my Motion but they are not to be considered defendants. I listed many exhibits to prove and show my allegations and who was responsible, U. S. Constitutional Violations (1st, 8th and 14th) as well as Colorado Constitution

Short and concise statement: _assaulted_

I was sexually and drugged by DWCF Sgt. Josh Lang on 10/31/21. This is the third CDOC correctional staff member to sexually assault me as this Courts records show. See Exhibit A – Appeals court and Exhibit B -U.S. District Court records attached. Sgt. Lang committed suicide about 3 days after sexually assaulting me; it was his last day at DWCF. Sgt. Lang had opportunity and position under the Aided-in-Agency theory because he would not have had access to me except for his employment by CDOC/DWCF. I was assaulted in bathroom #143 directly off the kitchen. I tried to cancel my appointment with Sgt. Lang because I had a migraine and he offered me a pill that he said would cure my migraine. I took it willingly because I had no reason to believe he would drug and sexually assault me because I did not know at the time that he had been counseled for being "to familiar" with offenders and that he was allegedly exchanging sex for Fentanyl. My appointment with Sgt. Lang was to discuss my "Special Diet" and to see if going on the kosher diet would meet my medical restrictions as I practice Orthodox Judaism. I was so drugged Sgt. Lang had to wheel me back to unit 1. I was overheard saying, "I will tell". I am wheel chair confined, was 77 when rape happened, am blind, hearing impaired with other disabilities. Being sexually assaulted is not part of my sentence. After telling I have been subjected to retaliation, harassment and denied medical/mental health care. _I will wait_

_(Personal Note)_

It took me over 11 months to prepare this Prisoner Complaint and due to my lack of sight/ blindness there are a lot of errors that I with my friends help have tried to correct. My friends have now been released so I don't have anyone to help me. I pray the court will accept my motion as rumor has it they accepted a complaint on toilet paper. I have faith that this court will allow counsel to amend this petition as I am not qualified make decision on violations and how they are applicable. I am elderly, blind, and have White Matter Disease of the brain per MRI (it appears that since I received many concussion when beaten and raped for over a year at CWCF in Canon City by Sgt. Joseph Smith) they affected my ability to think, have memory loss and problems functioning. I realize my age has contributed to my physical and mental health impairments along with the stress of being repeatedly raped by staff. Prison is not supposed to be a pleasant place, but one should not be subjected to repeatedly being raped by staff. I will be 80 on June 11th (born 6/11/44). My court deadline is 10/31/23 and I am mailing this legal mail through the DWCF mail room on 10/17/23.

_(2 B)_

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

JILL  COIT  #86530  , denver women's correctional facility (DWCF)

(Name, prisoner identification number, and complete mailing address)

P.O. BOX 392005, DENVER, Co 80239 Unit 2 D -120 (box 392005)

(Other names by which you have been known)

only Married names

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

\_\_\_\_    Pretrial detainee

\_\_\_\_    Civilly committed detainee

\_\_\_\_    Immigration detainee

\_X\_    Convicted and sentenced state prisoner

\_\_\_\_    Convicted and sentenced federal prisoner

\_\_\_\_    Other: *(Please explain)* _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:  Executive Director Andre Stancil   1250 Academy Park Loop

(Name, job title, and complete mailing address)

Colorado Springs 80910

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? \_\_\_ Yes \_\_\_ No *(check one)*. Briefly explain:

Per CRS & Title 17-1-101 Et Seq

Defendant 1 is being sued in his/her \_\_\_ individual and/or \_X\_ official capacity.

2

Defendant 2:    Governor Jared Polis State Capata; Building,Denver,C
(Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

    Authority under  Title 17-1-101 ET  Seq

Defendant 2 is being sued in his/her ___ individual and/or _X_ official capacity.

Defendant 3:    DWCF Warden  Ryan Long  1250 Academy Park Loop
(Name, job title, and complete mailing address)
DWCF P.O.Box 392005.       Denver,  CO 80239

Title 17-1-101, ET Seq CRS

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendant 3 is being sued in his/her ___ individual and/or _X_ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

_X_    State/Local Official (42 U.S.C. § 1983)

___    Federal Official

As to the federal official, are you seeking:

___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

___    Other: (*please identify*) _____

3

*Defendents Information*

Defendants for 1983 Civil Rights action for being sexually abused/raped by Sgt. Josh Lang on 10/31/21.

( 1 ) Defendant Warden Ryan Long is the Warden of Denver Women's Correctional Facility and is responsible for the overall management, supervision & control of all activities in DWCF including making sure offenders are physically safe from staff sexual attacks/abuse/rape and to keep body integrity for offenders and decisions regarding Plaintiff's allegations of staff sexual abuse in accordance with the custom, policy and practice of the CDOC and the State of Colorado. Has the authority to intervene in all investigations, medical decisions, activities, policy, services and programs, etc. And Title 17-1-101 ET. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 2 ) Defendant HSA Ms. N. Price who was responsible for administering Plaintiff medical care including making sure Plaintiff's outside medical appointments and for surgery were scheduled; for continuing Plaintiff accommodations, aids and equipment that have been in place for years relating to physical problems/impairments regarding Plaintiff's right & left hip, hand/thumbs, knees, feet, both shoulders, back/spine injuries, and disabilities which were caused or exacerbated when Plaintiff was brutally raped and physically injured at CDOC in 1995/6/7 by Sgt. Joseph Smith and LVCF sexual abuser Michael Dussart physical injuries and for denying long standing medication and appliances after being told she was named in my upcoming legal action. For supervising nurses and Nurse Practitioner Deb Reilly to ensure Plaintiff's diet met her food intolerances and in the overall management, supervision & control of DWCF and assisting in ADA and AIC decisions regarding Plaintiff and in accordance with the custom, policy and practice of the CDOC and the State of Colorado. And Title 17-1-101 ET. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 3 ) Defendant: Nurse Practitioner Deb Reilly as medical provider of Denver Women's Correctional Facility (DWCF). She was Plaintiff's medical provider and her actions were undertaken in accordance with her authority and capacity as medical providers/advisors/care takers, etc. in accordance with the custom, policy and practice of the CDOC/DWCF and the State of Colorado. For denying x-ray for loose right hip prosthesis and for denying ice to help with pain since cannot take pain medication because it makes her fall. For not scheduling needed appointments for cardiologist, dermatologist, eye appointment with Specialist in a timely manner. And Title 17-1-101 ET. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 4 ) Defendant Jane and/or John Doe(s) # _____ who assist HSA Price or N. P. Reilly in caring for Plaintiff in their authority and capacity as nurses or medical providers/advisors/care takers, etc. in accordance with the custom, policy and practice of the CDOC/DWCF and the State of Colorado. And Title 17-1-101 ET. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 5 ) Defendant Gary Little is head of security and is in charge of what comes into the facility and was instrumental in Plaintiff's signing of clothing contract and beading contract and Plaintiff's Personal donated Computer being removed. His authority and conduct was undertaken in accordance with his position and capacity in the above position and management decisions regarding Plaintiff and in accordance with the custom, policy and practice of the CDOC and the State of Colorado. And Title 17-1-101 ET. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 6 ) Defendant Kegan Fowler is director of PREA and was the go between in Plaintiff signing contracts for Personal Donated Computer and for Contract for non-polyester clothing for Plaintiff. And he was responsible for the overall management, supervision & control of the PREA program and his authority and conduct was undertaken in accordance with his positions at DWCF and DRDC. And for investigating other violations reported by Plaintiff on the PREA hot line. And Title 17-1-101 Et. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law. He had knowledge of problems/issues through letters from Plaintiff and did nothing.

3 B

( 7 ) Defendant <u>Jane and/or John Doe(s)</u> # 02 who assist Major Kegan Fowler in PREA or whomever was in charge in investigating PREA violations at DWCF regarding Plaintiff alleged sexual abuse by Sgt. Josh Lang on 10/31/21 and for other violations reported by Plaintiff on the PREA hot line. And Title 17-1-101 Et. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 8 ) Defendant <u>Jane and/or John Doe(s)</u> # 62 who was in charge of investigating PREA violations at DWCF regarding Plaintiff alleged sexual abuse by Sgt. Josh Lang on 10/31/21 and for other violations reported by Plaintiff on the PREA hot line. And Title 17-1-101 Et. Seq. CRS. Defendant(s) was at all times relevant to the allegations in this complaint were acting under color of state law.

( 9 ) Defendant <u>Captain Cerbo</u> who was in charge of the kitchen staff and failed to report Sgt. Josh Lang for being 'to familiar' to OIG who would have investigated and removed Sgt. Lang therefore Plaintiff would not have been sexually assaulted/raped. And Title 17-1-101 Et. Seq. CRS. Defendant(s) was at all times relevant to the allegations in this complaint were acting under color of state law. Cerbo failed to protect Plaintiff from known sexual predator in her department.

( 10 ) Defendant <u>Lt Ray</u> who failed to report documenting Sgt. Josh Lang for being too familiar when he counseled him and did not report Lang to the OIG even after he reported his behavior to Captain Cerbo head of the DWCF kitchen. And Title 17-1-101 Et. Seq. CRS. Defendant(s) was at all times relevant to the allegations in this complaint were acting under color of state law. Lt. Ray failed to protect Plaintiff from known sexual predator under his supervision.

( 11 ) Defendant <u>Jane and/or John Doe(s)</u> # who was in charge of investigating PREA violations at DWCF regarding Plaintiff alleged sexual abuse by Sgt. Josh Lang on 10/31/21 and for other violations reported by Plaintiff on the PREA hot line. And Title 17-1-101 Et. Seq. CRS. Defendant(s) was at all times relevant to the allegations in this complaint were acting under color of state law.

( 12 ) Defendant <u>Captain K. Mestas</u> as housing Captain for units 1, 2 and 3 is responsible for cell assignments, working positions, everything that goes on in the housing unit including punishment, disciplinary actions, allowing work instead of disciplinary actions, programs allowed in day rooms, and all other activities, services and programs throughout DWCF and Units 1, 2 & 3 respectively and in accordance with the custom, policy and practice of the CDOC/DWCF and the State of Colorado. Captain Mestas retaliated when Plaintiff reported to her she had been sexually abused/raped by Sgt. Josh Lang and took away plaintiff medication needed for total left hip surgery. And Title 17-1-101 Et. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

( 13 ) Defendant <u>Lt. A Donnelly</u> as unit 2 housing Lt. is responsible for the everyday activities of Unit 2 and all that goes on in the Unit. Confers with Captain Mestas and does not act without her approval and in accordance with the custom, policy and practice of the CDOC/DWCF and the State of Colorado. And Title 17-1-101 Et. Seq. CRS. Defendant was at all times relevant to the allegations in this complaint were acting under color of state law.

3 C

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: See next page

Claim one is asserted against these Defendant(s):

Defendants are listed in Motion-all have violated 1st *and* 8th Amendments

Supporting facts:

I have listed what each defendant did. Will sent Exhibits when i have the money for copies. Exhibits are explained in Motion. I am blind so had to rely on other offenders. I need help.

4

**Claim ONE**: Being raped by the 3rd CDOC/DWCF staff member Sgt. Josh Lang, Violation of 8th and 14th Constitutional Amendments; Violated Colorado Constitution; Violation of Colorado Anti-discrimination Act; Failed to abide by Title II of the Americans with Disabilities Act (42 U.S.C. §12131 and Section 504 of the Rehabilitation Act (29 U.S.C. § 794 with respect to the accommodations it provides to legally blind + offenders; Retaliation for reporting staff sexual abuse including but not limited to: Failure to protect, investigate and interview witness in a timely manner; Failure to have adequate security system; Failure to abide by Colo. Rev. Stat 18-3-401(4)(6)(7) and 18-3-401(2), 18-3-401(1)(a)(3)(4), 18-3-404(1)(2)(b); Failure to implement procedures and safeguards to protect Plaintiff from sexual abuse by staff. Failure to secure body integrity and to house offenders at risk to facility know for high staff sexual abuse; Plaintiff alleges defendants had knowledge of risk to Plaintiff; Failure of Supervisory staff know for staff TO REGULATE misconduct and failed to report staff sexual misconduct; failure to provide adequate outside mental health counseling for offenders of staff sexual abuse; failure to train and investigate by IG investigators, facilities investigators and IG Director of responsibilities to offenders that have been sexually abused by staff; failure of CDOC headquarter administrators to protect offenders who have been sexually abused by staff when notification has been presented in court of danger to vulnerable offender; failure to stop retaliation for reporting staff sexual abuse and for sending offender out of state that report staff sexual abuse; Plaintiff offered a contract that would not file legal action if sexually assault over a year prior to sexual assault of 10-31-21 as long as conditions/accommodations were met, this would have cost CDOC less than $500 out of pocket expense. Plaintiff also submitted to Executive Director Andre Stancil a proposed Release and Settlement Agreement tailored off the Blind Agreement with offenders Mackes and Chavez and the National Federation of the Blind of Colorado to accommodate the legally blind offenders as the Mackes suit did not include the legally blind. PLAINTIFF IS NOW BLIND. Meets Plaintiff needs.

( 1 ) Plaintiff has now been sexually assaulted and drugged by **a third CDOC staff member, DWCF Sgt. Josh Lang on 10-31-21 who committed suicide three days after Plaintiff stated she would tell. Plaintiff was 77 years old, legally blind, hearing impaired and confined to a wheel chair.**

( 2 ) Plaintiff was not a willing partner because Sgt. Lang drugged her under the pretense of giving her a pill that would stop her migraine, Plaintiff was not capable of giving consent.

( 3 ) Governor Polis and CDOC Executive Director(s) Andre Stancil and former Executive Director Dean Williams and Jane and/or John Doe Failed to abide by Title II of the Americans with Disabilities Act (42 U.S.C. §12131 and Section 504 of the Rehabilitation Act (29 U.S.C. § 794 with respect to the accommodations it provides to legally blind offenders. Plaintiff is qualified under ADA for sight impairment and other disabilities however these defendants failed to implement policy, procedures and Administrative Regulations to allow Plaintiff as a legally blind offender to have a personal computer in her cell as they allowed other sighted offenders and blind offenders to have. As of 6/27/23 Plaintiff is Blind.

( 4 ) Governor Polis and CDOC Executive Director(s) Andre Stancil and former Executive Director Dean Williams and Jane and/or John Doe failure to implement policy and procedure to protect plaintiff and address/correct the medical problems/disabilities caused by staff(s) beatings and rape in a timely manner; and Jane and/or John Doe(s) in Headquarters and DWCF Failure to implement policies, procedures and safeguards to protect Plaintiff from sexual abuse by staff, failure to secure security tapes, failure to follow procedures and Administrative Regulations, failure to follow PREA guidelines, failure to fire staff known for sexual activity with offenders and failure of placing offenders of staff sexual abuse in facilities with high rate of sexual abuse by staff; DWCF Warden Ryan Long, Major Brian Scott, Major Keegan Fowler and Major Gates-Fouse all knew of court document stating Plaintiff was vulnerable to staff retaliation at DWCF and their failure to protect Plaintiff from staff taking/ceasing property listed on property sheet, denying medical care and appliances that would enable Plaintiff to function in everyday life due to physical and mental disabilities and Captain Cerbo and Lt. Ray failure to supervision kitchen

P 5

staff and properly report staff misconduct and Jane and/or John Doe(s) their supervisors. *(warden)*

(A.)    These defendants failure to protect Plaintiff who was sexually abused by DWCF staff member, Sgt. Josh Lang on 10/31/21 even with Court notification she was not safe and in danger/vulnerable to DWCF staff retaliation; Defendant Sgt. Josh Lang was under investigation and being counseled for being "too familiar" with offender's according to Lt. Ray's report; Plaintiff alleges kitchen Supervision Captain Cerbo did not follow policy and procedures for noting PREA and IG Investigations after Lt. Ray reported/ counseled Sgt. Lang for being "too; familiar" with offenders;

(B.)    See Exhibit *1*    Court document stating, "56. When Plaintiff was transferred from La Vista to Denver Women's Correctional Facility in 2010, she was placed in segregation purportedly for her own protection from staff at the Denver Women's facility. EX. 3. (Carson Dep), p. 60, ll. 13-25) and  55 When Plaintiff was transferred from La Vista Correctional Facility to Denver Women's Correctional Facility (DWCF) in 2010, her personal property was confiscated at the La Vista facility. Coit Doc. 46"; *Ex 2 + Ex 3*

(C.)    Failure to secure body integrity from known risk of high staff sexual abuse at DWCF;

(D.) Failure of Supervisory defendants who were aware of the general risk of sexual abuse by staff on inmates at DWCF and the specific risk of Plaintiff's vulnerability to sexual abuse by staff; *"Cerbo "*

(E.)    Failure to provide adequate outside mental health counseling for Plaintiff after Sgt. Lang's rape;

(F.)    Failure to train IG investigators, facilities investigators and IG Director of responsibilities to offenders that have been sexually abused by staff; *"Scott Smith"*

(5)    Defendants Executive Director(s) Andre Stancil ~~and Dean Williams~~ and Jane and/or John Doe(s) failure to have adequate security system (by taping over tapes) rather than keeping tapes permanently;

(6)    Director Stancil, OIG's Director and investigators-Jane and/or John Doe(s), Warden Long, Major Gates-Fouse, and Jane and/or John Doe(s) Failure to: Protect, Investigate in timely manner, Interview witness in a timely manner, Failure ~~to failure~~ to have adequate security system (by taping over tapes) rather than keeping tapes permanently and show evidence of where sexual assault occurred and to protect the property of victims of staff sexual abuse;

(7)    Defendants Executive Director(s) ~~Williams~~ and/or Headquarters staff Jane and/or John Doe(s) and Dr. Butler failure to  respond to contract Plaintiff offered stating she  would not sue if sexually assaulted over  two years prior to being sexual assaulted on 10-31-21; contract stated in the event sexual assault occurred Plaintiff would be allowed to pick 3 out of the state of Colorado facilities and have all her property transferred and compensation given until sent to first named facility and then compensation would be greatly reduced(the contract was patterned off  former MTF transgender offender Moonshadow's agreement with CDOC except Plaintiff did not asks for money but for her disabilities/impairments : sight (donated equipment that would allow her to function/communicate ~~at no cost to CDOC~~),, hearing, hand, hip, back/spine, feet, diet as now diabetic, allowed Jewish religious items and allowed Sabbath meals from outside sources.

(8)    Plaintiff was not the only DWCF offender who Sgt. Josh Lang violated, Offender Jane Doe a DWCF kitchen worker has/sex on October 17, 2021 with Sgt. Lang who gave her fentanyl and is afraid of the retaliation so has not come forward but will be testifying to sexual encounter at my trial along with other offenders Sgt. Lang sexually abused.  Offender Doe felt she had no choice but to cooperate with Sgt. Lang as he was her boss.

(9)    **Sexual assault at DWCF on 10-31-21 by Sgt. Josh Lang:**

(A.) Plaintiff alleges when people think of inmate rape they think it occurred only one time and that is only true for the 10-31-21 DWCF sexual assault. Sgt. Lang sexually assaulted Plaintiff on his last day of

*6*

CDOC employment since Sgt. Lang committed suicide less than 3 days after he raped/sexually assaulted Plaintiff.

(B.) Kitchen employee Lt Ray told Plaintiff that Lang was being counseled/~~under investigation~~ for being "too familiar" with offenders and that he wrote a report after counseling Lang.

(C.) Plaintiff alleges defendants IG Investigators and DWCF Captain Cerbo and Jane and/or John Doe(s) failed to investigate Lang's being "too familiar". See Women Prisoners of D.C. Dep't of Corrections, 93 F 3d 910 and McRorie v Shimoda 795 F 2d 780. "Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error.

(D.) Plaintiff alleges if a thorough investigation had taken place she would not have been sexually assaulted by Sgt. Lang, he would have been removed from DWCF.

(10 ) Plaintiff has history of migraines & had a severe migraine when met with Sgt. Lang on 10-31-21 when Lang offered her a pill to stop her migraine, she took it. Plaintiff alleges she was so drugged that Sgt. Lang had to her push her wheel chair back to Unit One(She believes was given fentanyl- a little blue/gray pill);

(A.) Plaintiff was not capable of fighting or giving consent. Plaintiff is still having nightmares, stress, digestive problems, headaches, fear, trust issues, losing sleep, anxiety and depression over being raped by Lang and former CDOC rapists. There is no legitimate penological reason for Plaintiff to have been sexually assaulted/ raped by 3 CDOC staff members over a period of 29 years.

(B.) Plaintiff does not remember much of the assault but knows she screamed when Sgt. Lang tried to separate her legs; remembers screaming in pain and Lang putting his hand her over mouth (Plaintiff needed total left hip replacement and separating legs was very painful).

(C.) Plaintiff alleges the assault occurred in bathroom #143 by laundry.  This bathroom apparently is where Lang took his some of his victims for sex.

(D.) Plaintiff had no reason to believe Sgt. Lang would drug & sexually abuse her; at the time of the assault Plaintiff did not know of Sgt. Lang's prior sexual activity with inmates.

( 11 ) Plaintiff ask what constitutes a staff member being "too familiar" with offenders?

( 12 ) CDOC has in the past told the court that they had "no knowledge" that a staff member was acting inappropriately with offenders but that is **not the case this time**.

(13 ) Lt. Ray's told Captain Cerbo he counseled Sgt. Lang for being "too familiar"? But Cerbo did not report Sgt. Lang to the IG's office as required by PREA and CDOC policy.

(14 ) Plaintiff alleges she asked Warden Long the next day (on or about 11-1-21) when he was in Unit if there was an investigation going on for Sgt. Lang and Warden said "yes" and she asked if he would notify IG's investigator because she wanted to talk with them. There were other offenders around so did not go into detail.

(15 ) Later that week Plaintiff again spoke with Warden Long in Unit & he said the head of Investigations, Scott Smith was handling the investigation and Plaintiff again request that she be contacted, even though she previously grieved investigator Scott Smith (see grievance # R-DW15/16-00091035-1).

(16 ) Plaintiff alleges defendants had knowledge of risk of ongoing staff sexual abuse problems. See: Ullery v Raemisch, 2019 U.S. Dist. Lexis 21775. and other law suits.

(17 ) Plaintiff's scheduled appointment with Sgt. Lang on 10-31-21 was to discuss "Special Diet" of "no soy, beans and cabbage" diet not meeting the calorie needed for a MTF offender, and to see if kosher diet could accommodate current medical restriction.

( 18 ) Plaintiff alleges defendants in IG's Office, investigators and Jane and/or John Doe(s) failed to adequately investigate staff misconduct including sexual misconduct considering DWCF Lt. Ray's report on Sgt. Lang for being "too familiar" with offenders in a timely manner and to take action and/or acts of

omissions of when there is a history of staff sexual abuse at DWCF (see multiple law suits against DWCF) and retaliation for reporting sexual assaults by staff.

(19) Being sexually assaulted by a 3rd staff member is not part of Plaintiff's sentence;

(20) Plaintiff alleges in order to cut down on offenders reporting staff sexual abuse/rape, Executive Directors and Jane and/or John Doe(s) implemented AR 150-01 #21 which states, **An offender will not be charged with Sexual Misconduct or Sexual Harassment if the employee, contract worker or volunteer consented to the sexual or romantic activity.** (115.78(e))."

(21) Plaintiff alleges Sgt. Josh Lang used his position as CDOC/DWCF employee/correctional officer to accomplish this sexual assault/rape and drugging (his CDOC agency relationship) using his position and power of employment. . Under an "aided-in-agency theory" of vicarious liability, an employer may be held liable for the intentional torts of an employee, even if the employee was acting outside the scope of his or her employment, if the employee was aided in accomplishing the tort by the existence of the agency relation.

(22) Under "Aided-in-Agency theory" Spurlock v Townes, 661 Fed. Appx. 536, 10th Cir Court of Appeals, Sept. 12, 2016 under an "aided-in-agency theory" of vicarious liability, an employer may be held liable for the intentional torts of an employee—even if the employee was acting *outside* the scope of his or her employment—if the employee "was aided in accomplishing the tort by the existence of the agency relation." _Id._ at 1216-17 (quoting _Oceana v. Am. Furniture Co.,_ 2004- NMSC 018, 135 N.M. 539, 91 P.3d 58, 71 (N.M. 2004)) _Id._ at 1217-18. Who were inmates entrusted to his care, into submitting to sexual assault and false imprisonment." _Id._ at 1218.

(23) In Spurlock 2016 NMSC-014 states, under the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee was aided in accomplishing the tort by the existence of the agency relation. The position of power over the victim by virtue of the tortfeasor's employment must facilitate the commission of the tort. Snead v Wright, 2020 Lexis 236701 sexual harassment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., under 42 U.S.C.S. § 1983 for violation of her constitutional rights of due process and equal protection, and for intentional infliction of emotional distress and negligent hiring, retention, and supervision.

(24) Plaintiff alleges an Eighth Amendment violation right to be free from cruel and unusual punishment, "including the right to be secure in her bodily integrity and free from sexual advances, sexual fondling, and sexual intercourse. Defendants violated Plaintiff's Eight Amendment.

(25) Sexual harassment can violate the right to equal protection of the laws under U.S. Const. amend. XIV, thus triggering a 42 U.S.C.S. § 1983 cause of action. "If a violation cannot be characterized as official policy then the county still can be held liable if the practice is so permanent and well settled as to constitute a "custom or usage" with the force of law. The failure to investigate could be considered acquiescence to the harassment. An official policy is created when the county has a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the county's officers." **CDOC per AR 150-0 #21 does not hold offenders liable for having a sexual relationship with staff, contract workers or volunteers, thus official policy is established.** See also, Hirschfeld, 916 F.2d at 577. In Hirase-Doi, 61 F.3d at 783, the Tenth Circuit Court of Appeals stated that previous complaints of harassment could serve to put the employer on notice even if the employer did not know that this particular plaintiff was one of the perpetrator's victims.

(26) Plaintiff alleges Sgt. Lang knew he was under investigation and would be charged as a sexual predator/rapist and would have to register as a sex offender for the rest of his life therefore he took the easy way out and committed suicide.

(27) Defendants ~~Williams~~ *stencil* and Jane and/or John Doe(s) are responsible for providing CDOC facilities with an "adequate security system" by **not recording over tapes**. This failure to provide permanent security tapes inhibits and hinders Plaintiff's ability to be safe and have protection from abuse (sexual and physical) and to show evidence of staff sexual abuse. .

(28) Defendant(s) Jane and/or John Doe(s) failure to abide by Colo. Rev. Stat 18-3-401(4) (6) (7) and 18-3-401(2), 18-3-401(1) (a) (3) (4), 18-3-404(1) (2)(b) and not report offenders allegations of staff sexual misconduct and other violations harmed Plaintiff.

**Claim 2: Retaliation:** By DWCF staff (Jane and/or John Doe(s), Captain Mestas and/or Head Quarters administrators Jane and/or John Doe(s), Violated 8th Amendment, Colorado Constitution, etc.

(29)  **Current Retaliation Plaintiff suffered for reporting staff sexual misconduct/rape by Sgt. Lang at DWCF and reporting other staff sexual misconduct:**

(30)  Retaliation by Captain Mestas for reporting staff sexual abuse:

(31)  On Friday 4-15-22 Plaintiff reported to Captain Mestas and Lt. B. Donnelly (now Captain Donnelly)  that she had been sexual abuse by Sgt. Josh Lang.

(32)  Just three days later, on 4-18-22 Captain Mestas under directives from Major Gates-Fouse retaliated by shaking down Plaintiff's cell. Mestas even came in on her day off in street clothes and confiscated **all** personal property including all green uniforms, **medication**-needed for left hip replacement, hobby crafts, personal clothing, Braille equipment and gold chain w/Jewish Star, appliances and medical appliances including green therapy bands plaintiff has had for over 10 years that she needed for therapy due to hip replacement, etc. *some property still not returned to*

(33)  Plaintiff alleges was scheduled for total left hip replacement on 4-20-21 but did not have prescribed medication (Mupirocin [Bactroban]. Mestas took this medication thus denied Plaintiff required protection <u>endangering Plaintiff's life. Mestas is not medical staff member and had no right to confiscate legitimate medication issues by medical.</u>

(34)  Plaintiff did not get her self-medication back until the ~~second~~ *last* week of May 2022 that Captain Mestas took on 4-18-22 shakedown. *on 4/4 Mester shoke down slips*

(35)  Plaintiff allowed another offender who was having surgery to take expired Mupirocin out of the trash where she threw it because she no longer needed it/ *had expired* .

(36) Mestas confiscated at least 20 personal property items listed on Plaintiff's personal property inventory that have not been returned nor were they delivered to Property as required, (not counting hobby craft items).

(37)  Plaintiff was denied scheduled law library appointment due to not having green uniform. See Fogle v Pierson 435 F 3d 1252 (10 Cir 2006). *left*

(38)  Per physical therapy reports, ~~right~~ *left* hip replacement surgery was "hindered" by denial of (green) therapy bands for doing required exercises due to Mestas taking green bands and HSA Price's denial of band use in cell. Plaintiff's hip surgery was successful as Plaintiff is no longer in severe pain from left hip but still cannot lift left leg up even high enough to cut toenails as was not allowed resistance band therapy, <u>now hip is frozen even though N. P. Reilly refuses to recognize this problem</u>. See Physical Therapy reports <u>Exhibit's</u> *5* .

(39)  Captain Mestas, Lt. B. Donnelly –now Captain Donnelly and Major Gates-Fouse (~~Gates-Fouse~~ came later and was part of the inventory team) who took all Plaintiff's property to Unit 3 for inspection when normally inspection and inventorying offenders property is done in the unit bubble. *(4-18-22)*

(40)  Plaintiff called the PREA hotline and requested that all tapes regarding this illegal seizure saved for this court including: Unit 2 D wing hall, Yard between unit 2 and 3 and Unit 3 hall way and room

*pg 9*

where property was taken for inventory.

(41) Some of Plaintiff's legal documents and her journal were taken but not recorded on shake down list. Plaintiff needs her legal journal returned as it has dates and time of each defendant's interaction.

(42) Plaintiff did not discover missing legal documents in time to file a new grievance as grievance officer stated out of time and Plaintiff did not discover Spoliation claim but did grieve known missing property taken by Mestas. Of course all grievances were denied or lied upon.

(43) Plaintiff alleges property inventory for scheduled surgery is normally done night before surgery or when hospital calls saying offender admitted 4/20/22 when Denver Health called, Not 4/18/22. Plaintiff was denied all property –not given even hygiene, underwear or sleeping apparel. Some property was returned about May 1, 2022 but not given inventory slip till weeks later.

(44) Plaintiff alleges Captain Mestas had another staff member take Plaintiff's property to property/intake at approximately 2:15 PM on 4-18-21. Unit offenders watched as Plaintiff's property including her personal computer, table & other items slid off the cart in front of kitchen. This officer is not part of legal action as did not load cart. Plaintiff alleges this fall from cart damaged her personal Samsung computer, Braille Writer, etc.

(45) Plaintiff alleges Captain Mestas also damaged her TV; Plaintiff filed grievance so print shop glued the broken/damaged piece which came loose and TV does not work properly. Requested new TV in grievance. denied.

(46) Plaintiff still has not received the majority of items Captain Mestas took although grievances response claimed items were returned. numerous times

(47) Captain Mestas took Plaintiff's green therapy bands that were on her property list for knee and hip therapy. Plaintiff was sent to Denver Health physical therapy who sent green therapy bands back for Plaintiff to use in her Cell. HSA Price allowed green therapy bands but then revoked permission after being pressured by security. Other offenders were allowed to check out green therapy bands in gym and Incentive Unit for exercise. Plaintiff had green therapy bands on property sheet since 2015 with no incidents.

(48) Plaintiff alleges property was taken as retaliation for reporting being raped by Sgt. Lang to Captain Mestas.

(49) See Murphy v. Lane, 833 F.2d 106, 108 (7th Cir. 1987) "Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, cf. Buise v Hudkins, 584 F.2d 223 (7th Cir. 1978), courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred.

(50) Other retaliator acts for reporting Sgt. Lang raping plaintiff:

(51) DWCF Unit 2 housing Sgt. Smith and/or Jane and/or John Doe(s) intentionally exposed Plaintiff to COVID and other illnesses for reporting sexual abuse at DWCF by Sgt. Lang when:

(A,) Plaintiff alleges after being singled cell for months due to Plaintiff being elderly and legally blind, Plaintiff was ordered to find an offender cell mate. Offender Jenkins had history of problems living with cell mates but Plaintiff felt sorry for her. Plaintiff immediately began reporting Jenkins for leaving her radio on all night without head phones. Staff documented Jenkins' radio being on and told her to turn it off but she didn't. Jenkins physically pushed Plaintiff down injuring her shoulder (shoulder checked her). New MRI shows torn rotator cuff which needs surgery. When Plaintiff reported Jenkins behavior and assaults, Captain Mestas refused to remove Jenkins from Plaintiff's cell. Then Sgt. Smith housing Sgt. and/or Jane and/or John Doe(s) placed offender Peggy Saiz who had been in a cell with sick cell mate (offender See (offender See)had been sick for over 6 weeks) in Plaintiff cell for one night.

(B.)Plaintiff alleges within one week she became extremely ill and saw DWCF nursing staff on

10

11/11/22 and reminded nursing **if** she tested positive for COVID she would need a cell with a raised toilet or a toilet stand to place over toilet per medical (like she uses in Unit 2 C wing handicapped bathroom).

(C.) After testing positive for COVID, Plaintiff was placed in segregation on 11/14/22 with <u>no medication for 5 days not even Tylenol, cough drops or ~~any~~</u> medication ~~whatsoever~~ (also confined were offenders C. Sears (see Sears grievances as she is not a party to this law suit) and M. Gardner for verification of no medication given even though grievance denied these offenders were not given medication for 5 days). ~~not defendants - Sears + Gardner - offenders~~

(D) ~~(D)~~ Plaintiff was placed in cell where toilet could <u>only</u> be flushed twice in one hour when she had diarrhea and vomiting but offenders Gardner nor Sears were placed in this type of cell.

(E) ~~(E)~~ Plaintiff was denied medical documented accommodations for a raised toilet seat/chair as due to Plaintiff inability to bend or raise self from lower toilet (has hand and shoulder injury). Plaintiff fell and injured herself many times when trying to get off toilet and hurt her knee and when reported to guard, guard stated, "you're not bleeding so no big deal". Plaintiff alleges this was direct retaliation for reporting staff sexual abuse by Sgt. Josh Lang.

(52) After Plaintiff gave N. P. Hillary Victoroff a copy of the original report of X-ray <u>done at CWCF</u> regarding Tuberculosis, she received Victoroff's note dated **9/11/20** stating, " DWCF Medical Clinic from N. P. Hilary Victoroff, "You have a positive PPD skin test for Tuberculosis,(TB) <u>which likely means you have Latent TB-not active TB</u>" Second paragraph, "That means you have at some point in life, been exposed to TB without becoming ill and <u>now have encapsulated TB organism in your lungs that it could be triggered by an  acute illness or stressor to become active TB.</u>   Exhibit 6.

(53 ) Plaintiff alleges N. P. Victoroff wrote Exhibit 6 report after Plaintiff provided her with a copy of the original X-ray report stating Plaintiff had "encapsulated TB organism in lungs". DWCF medical records of this X-ray has disappeared. Medical records no longer have original X-ray so medical claims Plaintiff does not have latent Tuberculosis.

(54 ) Plaintiff alleges Jane and/or John Doe(s) intentional destruction of pertinent medical records and X-ray records deprives Plaintiff of evidence need in order to properly care for her and sent to specialist.

(55) ~~Due to~~ plaintiff ~~being legally~~ blind, has White Matter Disease of the brain and severe balance problems and constantly falling over items cellmate leaves in way with less than 18 inches between Plaintiff's wheel chair and cellmate's bed, hearing impaired, having blocked artery to heart, immune compromised, diabetic and risk for latent TB to become active Tuberculosis she needs to be <u>single celled.</u>

(56 )  Captain Mestas allows offenders she likes to be single celled but because Plaintiff has named her in the law suit & reported staff sexual abuse she is not allowed a single cell.

(57 )  Executive Director(s) ~~Williams, Trani, Owens~~ Dr. Rudolph, Dr. Butler and Jane and/or John Doe(s) and mental health's failure to provide adequate outside mental health counseling for Plaintiff due to staff sexual abuse; Plaintiff is still having nightmares, digestive problems, headaches, stress, fear, lack of trust, night sweats, anxiety, stomach aches, ~~and~~ body pain and severe depression to the point of not finding a reason to live due to being continually raped by staff. At what age is Plaintiff safe from staff misconduct/ retaliation/ sexual abuse as Plaintiff was raped at 77 years of age. This is not part of Plaintiff sentence and the court did not state being raped is part of the sentence. It is CDOC responsibility to provide a safe environment from staff and to take action when staff retaliation occurs in any form.

(58 )  Defendants ~~Williams, Trani, Owens~~ Jane and/or John Doe(s) failure to implement policy and procedures to protect "the property of victims of staff sexual abuse" from staff retaliation and from being retaliated against by being sent out of state and losing their property, medical equipment and hobby crafts.

( 59 ) Plaintiff is the only offender at DWCF that has Braille equipment/property for teaching Braille to offenders, but Braille items were taken & not replaced and have disappeared upon Captain Mestas seizure. Plaintiff fears her Braille equipment/papers/lessons/games will not be transferred with her when Director

11

Stancil transfers her out of state or to LVCF.

( 6 0 ) Plaintiff alleges CDOC has a history of lying about returning her personal property whenever she reports being sexually assaulted by staff see grievance numberDW10/11-140. See Exhibits ___ where when Plaintiff was sent to Kansas she only signed one property sheet but defendants claim she donated all her property or wanted it destroyed. Which these exhibit proves is a lie.

**CLAIM 3:** Violation of 8th Amendment, Deliberate Indifference to serious medical needs as documented by DWCF medical records, outside specialist, MRI's and X-rays. Violation of ADA rules and regulations.

( 61 ) Defendants Polis, Executive Directors and Jane and/or John Doe(s) as well as AIC staff -Janet Smith and , HQ legal department A. Jacobson-Sanchez, and Jane and/or John Doe(s) and Warden Ryan Long's — Defendants failure to implement policy and procedures to accommodate, protect and make accommodations for the physical and mental damage done when staff rape offenders. Defendants knew Plaintiff was vulnerable & did not protect. Above Defendants failed to:

(A.)Protect offenders who have been sexually abused by staff safe from retaliation; (B.) Accommodate emotional damages caused by being sexually assaulted and beaten by staff by not providing outside mental health counseling; (C.) Allow cell accommodations and equipment to meet physical injuries,physical abuse caused or exacerbated by staff; (D.) Implement policy and procedures to allow sexually abused offender to live a productive life by allowing personal computers with vision programs for the(legally)blind; (E.) Allow personal computer, scanners and printers to be donated that cost CDOC nothing to the legally blind who have been sexually abused by staff; (F.) Allow access to interactive internet programs that are free to the elderly (75+) with vision impairment that were sexually abused by staff when beating of head caused Plaintiff to have White Matter Disease of the brain; (G.) Allow Plaintiff who has medical documentation of White Matter Disease of the Brain and hand injury that was caused or exacerbated when beaten/raped by staff at CWCF to have cell accommodations to assist with disabilities; (H.) Allow Plaintiff to have a service dog when documented as ~~legally~~ blind when there are service dogs being trained on facility grounds (I.) Allow items to accommodate physical impairments and disabilities by allowing one of the closet that has shelves and drawers to take the place of the cell closet that do not meet Plaintiff's no bending restriction. These accommodations would cost very little and provide accommodations that meet disability needs.(J) Plaintiff submitted proposal for DWCF to have an 75+ wing for elderly offenders diagnose with beginning states of dementia which would cost CDOC/DWCF nothing as outside organizations would provide donations for said offenders in this program but proposal was ignored , (K) failure to follow policy, procedures and Administrative Regulations.

(62) Deliberate Indifference by CDOC(DWCF) and medical staff including but not limited to: Dr. Maul, and R andulph Doctor C Jane and/or John Doe(s) of HQ medical and Mental Health departments and HSA Nicole Price, N. P. Deb Reilly, N. P. Hillary Victoroff, DWCF nursing staff and Jane and/or John Doe(s) failure to follow outside specialist consultants recommendations when there is no qualified medical doctors/providers to treat, diagnose or counter outside specialist orders for **Periodontics** (Plaintiff can't chew or digest food properly due to gum disease and tooth pain; **Cardiologist** for known blocked artery to the heart; **Neurologist**-head injury from concussions caused or exacerbated from beating by staff and White Matter disease (per MRI's) and severe balance problems; and **Orthopedic** for shoulder and hand impairment/disability that was caused or exacerbated by beating received by CWCF staff that has deteriorated over the years and is extremely painful and inhibits ability to function,and for failure to take to orthopedic specialist for right hip loose prostheses in a timely manner thus Plaintiff must live in constant pain because DH Orthopedic surgeon stated cannot remove or replace damaged Stryker right hip

N. P. Reilly refused to X Rays in 2016

12

prostheses as Plaintiff would not survive the surgery. — (no takes to dentalogist for Resh.

(63) Defendants Stancil and Williams and Jane and/or John Doe(s) failure to implement policy and procedures for specialist(s) they sent Plaintiff to medical does not have to follow their recommendations even though there is no qualified staff person capable of diagnosing, treating or over riding specialist recommendations. Plaintiff does not know names of those in charge

(64) Defendant Executive Director(s) and Jane and/or John Doe(s)in HQ failure to implement policy and procedures to allow outside specialist visits when Plaintiff does not have funds to cover cost of seeing outside dental specialist (Periodontics) since CDOC does not provide periodontics service for gum disease-gingivitis, implants (offenders can wait years for dentures that don't fit), caps, crowns and other necessary dental care to help save good teeth; failure to allow recommend Periodontics visit to fix gingivitis and gum disease at no cost to Plaintiff who is serving a life without parole; Plaintiff is an elderly offender who has no means of support or to pay for outside needed dental care and is denied a CI job due to age which would allow Plaintiff to pay for outside medical care; can't even get a formal interview for no CI employment thus age discrimination. Some offender at DWCF have CI jobs that pay over $1,500 per month.

(65) Plaintiff is in extreme pain and cannot chew foods property due to teeth/ gum bleeding, swelling and pain. DWCF dentist Wilson stated he would pull Plaintiff teeth next time had gum problems as CDOC does not offer dental care for gingivitis and only periodontics provides that type of dental care. Medical research documents gum disease can lead to more than losing teeth and can exacerbate developing autoimmune diseases, diabetes (which I now have) and heart disease which I also have; Gum disease also raise the risk of mental health conditions because inflammation in the body and brain contributes to these conditions. ) See Wellman v Faulkner, 715 F.2d 269, 272 (7th Cir. 1983) (quoting Ramos v Lamm, 639 F.2d 559, 575 (10th Cir. 1980), for deliberate indifference" claim.

(66) Plaintiff alleges DWCF medical team including but not limited to: HSA Price, N. P. Reilly, N. P. Victoroff and HQ Administrator(s) who schedules and Jane and/or John Doe(s) do the following:

(A.) HSA Nicole Price (refuses to allow medical equipment that Plaintiff had prior-i.e. heating pad and Tens unit paid for by insurance company and personal computer to accommodate Plaintiff's pain and vision and hand impairment that was caused by CWCF rapist Sgt. Joseph Smith beating and rapes.

(B.) Plaintiff has been suffering hand pain for years, can't write as it causes hand to swell and is very painful but AIC coordinator Janet Smith & legal A. Jacobson Sanchez will not allow Plaintiff to have her personal computer as HSA Vandermark/Major Brian Scott allowed; in fact N. P. Victoroff wrote in Plaintiff's medical chart Plaintiff's personal computer was an ADA accommodation but Janet Smith made her change it;

(C.) Plaintiff alleges Jane and/or John Doe(s) at HQ administrators failure to implement policy and procedures to accommodate Plaintiff who has White Mater Disease and been diagnosed with beginning stages of Dementia to have use interactive computer use as there are free interactive programs on the internet for elderly brain disorders (WMD) and to delay Dementia at no cost to CDOC but plaintiff is denied these programs.

(D.) Plaintiff submitted to Director Stencil, Jane and/or John Doe(s) and Warden Long a proposal that would allow offenders over the age of 75+ with documented dementia to receive outside donations of clothing, food, shoes and other needed items they cannot afford to purchase because they make less than $10 in state pay and at that age most parents are deceased. This proposal would cost CDOC/DWCF nothing and would provide for these offenders needs. Instead was told would put 75+ with dementia behind a partition in the infirmary with 3 beds to a room. This would cause dementia to

13

deteriorate faster.

(67) Medical records documents Plaintiff had complained of hip pain for over 10 years however, N. P. Reilly's failure to allow a simple x-ray of right hip in 2016 denied Plaintiff to be part of class action law suit for defective Stryker hip prosthesis; Plaintiff had to wait for X-ray of 2018 that showed prostheses was loose 2cm. Stryker attorney stated a defective loose prostheses was worth approximately $500,000 for similar claim in the class action. Plaintiff presented Reilly with Stryker defective prostheses information requesting an x-ray to become party to class action and Reilly stated Plaintiff "did not have a defective right hip prostheses" that she would know if Plaintiff "had a loose prostheses". Plaintiff is still suffering right hip debilitating pain and cannot take pain medications as they leave her groggy and she falls. Plaintiff has forgiven Reilly for this error ~~judgement~~ but still must suffer in constant pain due to denial of equipment and appliances that would help Plaintiff function. denied even ice in cell for

(68) Denver Health Orthopedic surgeon stated due to advanced age and Plaintiff medical conditions he swelling would not recommend replacing Plaintiff defective right hip prostheses. Plaintiff lives in constant pain, cannot walk any distance and even standing is painful. yet denied ice in cell for swelling or chiropractor care.

(69) Defendant ~~Williams~~ Stancil and Jane and/or John Doe(s) Failure to implement policy and procedure to allow Aids/equipment/items that would allow Plaintiff to function; to reduce painful conditions of in right hip (loose prostheses) and of no bending restriction; shoulders (torn rotator cuffs), torn menusis of left knee; denied seeing dermatologist for documented continual rash, itching and irritating of skin and , ~~pulmonary specialist for painful veins in legs, etc~~. This denial of serious medical need are well documented and DWCF medical has no one capable and trained to treat these serious medical conditions. Pain medication caused plaintiff to fall. (and/or tort or court allows)

**CLAIM 4**: VIOLATION OF 8TH AMENDMENT; **Breach of Contractual** obligations and being forced/ required to sign contract or not allowed a personal Samsung computer; Failure to implement a policy and procedure to allow Plaintiff who is (legally) blind a personal computer ~~access~~ even though it cost CDOC nothing; Denied Plaintiff the opportunity to fulfilling contract that required Plaintiff to repaired computer at her expense: Failure to implement policy and procedures that would require CDOC staff to honor contractual obligations when requiring offenders to sign contract; Plaintiff has a liberty interest; Warden Long terminated contract arbitrarily without Plaintiff breaking "expectation" rules of contract; Major Fowler verbally promised Plaintiff would not lose computer unless she violated contract by being removed from Incentive Unit due to breaking **serious rules**. as of 6/27/23 Plaintiff is officially Blind !

(70) Defendants including but not limited to Governor Polis, CDOC Executive Director(s) Stancil ~~and Williams~~ and Jane and/or John Doe(s) the legal department (A. Jacobson-Sanchez and Jane and/or John Doe(s) and AIC coordinator Janet Smith and DWCF Warden Long's failure to implement policy and procedures to accommodate (legally) blind offenders to have personal computers yet blind offenders are allowed lap tops free of charge; However def. Janet Smith is not following Markes class action

(71) Plaintiff was declare **totally blind in left eye** by Denver Health in 2005 and by CDOC eye specialist and other eye specialist; has only center vision in right eye since 2015 and is sometimes totally blind when black floaters line up, or has double vision, since COVID for the second time ,vision is blurry all the time. Per eye specialist Plaintiff is entitled to accommodations for the ~~legally~~ blind, yet Defendant Janet Smith and Jacobson-Sanchez ~~claim plaintiff only lacks peripheral vision~~. did not follow Markes,

(72) Plaintiff has very limited sight in the right eye; ~~loss of vision 50% to 60% loss as of 2015~~; Plaintiff alleges she has continued to lose even more vision ~~and can be totally blind for hours or days~~. Defendants have not ~~challenged Plaintiff vision with~~ National Federation for the Blind (NFB) Release and Settlement agreement obeyed Markes and See NFB Settle w/ H.eye reports.

14

which might allow Plaintiff some accommodations for a computer, scanner & printer

( 73 ) However, Plaintiff was not allowed to be part of the NFB law suit but attorney Robertson took the 5 pages of accommodations Plaintiff suggested blind and legally blind offenders should have and incorporated them in her law suit. However she let CDOC outsmart her because in the Release & Settlement Agreement CDOC can put the computers in the day room or the offenders cell. Naturally they will select the day hall which give other offenders the opportunity to break/destroy the computers like they did with mine. There was nothing in the contract that stated how long CDOC had to repair or substitute computers once other offenders (who are not allowed to use) broke computers. Again CDOC outsmarted MFB attorney Robertson.

( 74 ) Plaintiff needs her donated computer (a new donated computer as no cost to CDOC) in her cell because she is elderly and must use her computer when she can see and enlarge the print. Plaintiff submitted a proposal that she will turn into a Class Action Law Suit that meets the needs of legally blind offenders who have some sight. If the court wants to see said Class Action see Exhibit ___.

( 75 ) Plaintiff requested permission in 2018 from DWCF Warden Ryan Long, Major Brian Scott and every Major at DWCF for permission to apply for a scholarship or low cost computer due to sight & hand impairment. All warned that there was no organization that would give an offender a personal computer nor would an offender receive a scholarship. However Plaintiff asked if a computer was sent, could she have it? All said "yes";

( 76 ) Warden Long received Plaintiff's donated personal Samsung computer in December 2018 and issued computer to Plaintiff in May of 2019 after requiring Plaintiff sign a contract with the understanding computer would be kept in safe location; Plaintiff Samsung personal computer was placed in her cell Unit 2-D-120 the Incentive Unit by staff in about December November 2021 without any problems despite contract stating computer was not to be in Plaintiff's cell. ( about January 2022 )

( 77 ) Plaintiff alleges, **Warden Long removed her personal computer from her cell less than 1 week after reading Plaintiff Intent to Sue which Major Fowler gave him ( November 2023 ) thus demonstrating retaliation. Thus breach of contractual duties.**

( 78 ) Plaintiff is legally blind and removing her authorized personally Samsung computer prevents Plaintiff from taking part in programs, activities, educational classes, and to communicate.

( 79 ) See Al-Turki v Tomsic 926 F 3d 619 (10th Cir June 2019) "A constitutionally protected liberty or property interest may be a creation of federal law (including the Constitution itself—at least for liberty interests) or of state law. And see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies . . . ."); Also see Sandin v Conner 515 U. S. 472.

( 80 ) Plaintiff signed a computer contract with Warden Long and the Courts "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry …" United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212-13 (10th Cir. 2008). Any ambiguities in the plea agreement are construed against the government as the drafter of the plea agreement. United States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008). If the government breaches a plea agreement, the defendant is entitled to a remedy that "restores the meaningfulness of his bargain." United States v. Burke, 633 F.3d 984, 994 (10th Cir. 2007).

( 81 ) Plaintiff's personal Samsung Computer had Jaws (a program for the blind) and other programs including Speech to Text, Screen Reading Program, Braille symbols, rules and regulations for Braille. Plaintiff did **free** Brailling for outside community including Jewish Synagogues, all denomination churches and any organization that request services).

( 82 ) Plaintiff's computer was kept in a secure location in the Xerox room of Unit 1 (incentive unit) until

15

Captain Mestas and Jane and/or John Doe(s) ordered it moved to the alcove in back of the unit office where all offenders had access to the computer and damaged computer.

( 93 ) As of end March 2021, Plaintiff's computer was on and off again inoperative (needed a $15 part that turns on computer per DWCF computer expert computer teacher Pam Cummings); would turn on when it felt like it and remain on till Plaintiff turned it off. So Plaintiff had some computer use.

( 84 ) According to written contract Plaintiff is "responsible for any and all cost related to the computer/printer/accessories but Long refused to allow her to send out computer to be repaired thus voiding contract. See Exhibit ## computer contract and Warden Long's ~~refusal Plaintiff to send out computer.~~

( 85 ) Associate Director Trani fought Warden Long giving Plaintiff her personal computer and made Long respond in writing why he gave Plaintiff a personal computer (Plaintiff request Warden Long's documentation to Trani be made a part of this Motion as Exhibit XX) as Plaintiff was not allowed a copy.

( 86 ) Warden Long told plaintiff he was giving her Samsung personal computer because it allowed her to function, meet ADA requirements and to correspond with outside world, family, medical, Headquarters, mental health and staff & file grievances that are legible and for her doing community service that made CWCF look good. Plaintiff had many grievance denied due to inability to read; Plaintiff's hand writing not always legible due to staff injuring her hand (C C W C F )

( 87 ) Defendants AIC Janet Smith and legal A. Jacobson-Sanchez were against Plaintiff having a personal computer and refused to add it to the list of ADA appliance despite computer meeting the ADA criteria or to be allowed on Plaintiff's property list as AR dictates. Exhibit 10.

( 88 ) See grievance responses from A. Jacobson-Sanchez (Exhibit 11 ) and CDOC attorney and grievance officer Anthony DeCesaro (Exhibit 12 ) both say computer is listed as personal property but denied listing

( 89 ) CDOC just settled law suit (Mackes & National Federation for the blind) so blind offenders could have free lap top in their cells or in day room but there is nothing for legally blind offenders ~~who lose their sight and become blind for shorter periods of time.~~ Plaintiff has 20/200 See exhibit A-for violation.

( 90 ) Plaintiff alleges personal computer is necessary to accommodate her disabilities (sight and hand-(De Quaran's disease-caused or exacerbated by beating from staff as CCWCF) that prevent writing without pain and swelling; Plaintiff is Blind per m.d/tea.

( 91 ) Warden Long breached Plaintiff's signed contract by taking away computer when he refused to allow Plaintiff to send out computer to be repaired when offenders damaged computer because it was not kept in safe location. Jane and/or John Doe(s)

( 92 ) AIC Janet Smith, Warden Long and Staff refused to accommodate plaintiff's disabilities under ADA by allowing personal computer yet Warden Long and Major Gates-Fouse allowed other DWCF (chosen offenders in various groups) lap top computer they keep in their cell and they allow their friends to use these computers. Groups such as: in the Women of Influence, Dog Program, Voices and other Captain Mestas' groups and various committee members and even the "cross fit" program offenders may take the lap top computers in their cell, out of unit or throughout the unit. Captain Mestas allows these offender free printing.

( 93 ) Plaintiff has a First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate, and may draw upon internal prison grievance procedures and state judicial review where available.

( 94 ) Plaintiff worked as para pro for case manager Eric Jacobi for years (May 2019 till letter from Major Scott in 2021) and for 5 other case managers but was denied para pro wages. See Exhibit 13

( 94A ) (A.) See Exhibit 14 letter from Major Brain Scott dated, 7/20/21 "Subject: Back pay for Para Pro services" where Major Brian Scott refused to pay Plaintiff for working as Jacobi's para pro.

(B.) Defendant Jacobi require Plaintiff's family to send Xerox paper before he said Plaintiff would be allowed personal printer as contract allows; Plaintiff provided unit with Xerox paper when they had none; staff member, Ms. Anderson (not a defendant) told Major Scott that Plaintiff provided the Xerox paper to her

16

and Sgt. Werner for unit use; another witness that Plaintiff working for Jacobi full time would be Sgt. Marrietta L. Russell; she will testify Plaintiff was already working at 6AM most morning when she came to work or she would let Plaintiff into Xerox room where Plaintiff worked. ℰ/15

(94) Captain Mestas ordered Plaintiff not to provide staff with Xerox paper & forced Plaintiff to sign she would receive 100 pages of free Xerox copies for paper given but Plaintiff never received 100 free copies and was forced to sign agreement; Now Captain Mestas has ruled that no offender is allowed to make copies in Unit 2 the Incentive Unit but she allows her 'special offenders' unit 2 offenders and Unit 3 offenders free copies in Unit 3.

(D.) Plaintiff did all of Mr. Jacobi's work including processing phone request, responding to kites, counseling offenders who he did not want to meet with, even filled out reports, including scheduling appointments and making sure offender's needs were met; Plaintiff did work for 5 case managers. Exhibit__.

(E) Plaintiff alleges Mr. Jacobi labeled her a "snitch" for telling on him and this endangered, prejudiced and harmed her safety. See Benefield v Mc Dowall 241 F3d 1267 (10th Cir 2001). This kept Plaintiff from being selected for committees she qualified such as Mental Health Peer Assistant (Plaintiff has degree in psychology and secondary education) and other committees.

(95) Investigator Scott Smith gave Plaintiff a "personal flash drive" for her computer use but Captain Mestas took it away (Major Scott had originally given Plaintiff a flash).

(96) Plaintiff was never allowed a printer or scanner as promised and still has reams of Xerox paper.

(97) Plaintiff was called to the shift commander's office on or about 9/21/22 and presented with letter ordering Plaintiff's personal Samsung computer be sent out. ~~Col. Caley was present~~. Exhibit /5 (major little) Ɛ 16 – Computer contract

(98) Plaintiff alleges Warden Long's decision to confiscate Plaintiff personal computer was arbitrary and capricious as there were specific expectation for Plaintiff keeping her personal computer. See Wolf v Mc Donnell 418 U. S. 539, 558.

(99) Warden Long's letter Exhibit /5 states, "the facility has done extensive investigation into Offender Coit's claims that the computer was damaged by another offender, to date the facility has not discovered any information to corroborate that claim." Plaintiff wants evidence of extensive investigation reports.

(100) Plaintiff alleges when Major Brian Scott replaced computer keyboard (**Exhibit** /7 grievance number R-DW20.21-00175632-1 dated 8/12/2020 stating, "…In addition, Maj. Scott did replace your keyboard…".

(A. ) Plaintiff alleges Major Scott told her that facility was partially responsible for damaged keyboard since computer was not kept safe. This shows DWCF facility/ Warden Long was responsible for computer safety and ~~some investigations took place at that time~~. Plaintiff wants Samsung Computer replaced.

(B. ) Plaintiff alleges retaliation by being forced to send out computer ~~for reporting sexual misconduct by staff (October 2021 DWCF staff member Sgt. Josh Lane) and~~ for filing grievances and filing Intent to Sue on Warden Long.

(101) Breach of Contract pertaining to Plaintiff's personal Samsung computer. Plaintiff was informed (threatened) unless stops claim of being transgender and going to male facility DWCF will not honor the Contract signed on May 10, 2019 . ~~See Exhibit~~

(102) Plaintiff's flash drive that OIG director Scott Smith gave her was confiscated (by Captain Mestas) therefore she could not get documents off her computer, thus inhibiting access to the court as computer has documents relevant to this court proceedings-dates and incidents of violations.

(103) See Exhibit 18 dated 7/01/2008 stating, "Pt should not type or write except for signing." This demonstrates CDOC/DWCF has had knowledge of Plaintiff hand impairment for over 15 years and still fails to accommodate by allowing her a computer with voice activated programs even though Janet Smith allowed voice activated program on law library computer. Law library is only open maybe 2 days a week if that.

(104) DWCF medical doctor authorized Plaintiff to have use of "Speech to Text Program" in **2015** see

17

Exhibit _19_. However Plaintiff is denied this except for the law library that is about 1 day per week. _(how it work.,)_

(105) Plaintiff alleges did not receive ADA accommodation for "Speech to Text program" until ADA coordinator, Janet Smith authorized in **2021** (only for use in law library). Defendants Smith and Jacobson-Sanchez did not obey DWCF doctor's orders and they are not medical staff. See Exhibit_20_

(106) Plaintiff alleges has a liberty interest in having a personal computer as a contract was signed and Plaintiff did not void contract, Warden Long did when he acted arbitrary and capricious. See Cosco v Uphoff, 195 F. 3d 1221 and Wolff v. McDonnell, 418 U.S. 539, 557, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), at 558, and Paul v. Davis, 424 U.S. 693, 710-11, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976); and the Due Process Clause."

(107) Plaintiff alleges Defendant Long denied her putting personal computer **on property** sheet as AR's 850-04 requires (Page 2, (See Exhibit_21_. Retaliation and AR violation.

(108) See **Exhibit_22_** dated June 26, 2017 from mental health provider Mike Champion stating, " I am asking that Ms. Coit have access to a computer approximately 2 to 3 times per week for approximately 2 hours duration. Due to her Dequaran's disease and legal blindness, he is unable to employ conventional methods of recording thoughts, and feelings. These entries are to be printed, turned over to Ms. Coit, and deleted at the end of each session due to their confidential nature." Plaintiff is denied mental health treatment program.

(109) Defendant Janet Smith and A. Jacobson-Sanchez take the position Plaintiff is to find another way to obey Mental Health Providers therapeutic plan. Neither are mental health providers or medical.

(110) See **Exhibit_23_** AR 850-06 (IV)(1) " A computerized inventory will be maintained for each offender documenting sate issued items as well as items purchased through canteen or other approved sources of supply. A copy of the inventory will be given to the offender. Any time a personal property item is received or discarded the offender's computerized property inventory will be updated and a copy forwarded to the offender [5 ACI-5A-08]."

(111) Defendants Executive Directors Stancil ~~and Williams~~ and Jane and/or John Doe(s) failure to implement policy and procedures for the (legally) blind to have personal computers with programs for visual impairments in their cell where computer would be safe; sighted offenders are allowed typewriters in cell. A computer is just a glorified typewriter as canteen sold typewriters have memory. Typewriter print is too small to be read by Plaintiff. Due to Plaintiff's sight impairment (~~legally~~ blind) not having access to a computer imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

(112) Defendants Executive Directors ~~Jane and/or John Doe(s) including~~ Stancil, ~~Williams~~ and Jane and/or John Doe(s) failure to provide means for offenders with hand impairments to file grievances on computer and respond to grievance so they are legible. _(Plaintiff)_

(113) This denies Plaintiff access to the courts. Plaintiff's hand impairment was caused or exacerbated by CWCF staff and therefore should be accommodated by CDOC. _(e.g. Joseph Smith)_

(114) Defendant Janet Smith and Jane and/or John Doe(s) of ADA and A. Jacobson-Sanchez and Jane and/or John Doe(s) of legal takes the position Plaintiff can use her OCA's for writing grievances, etc. However grievances can contain medical information and some OCA's are illiterate and do not want to assist with grievances or tell everything they hear or read, thus Plaintiff's medical information is not secure or private. HIPPA violation.

(115) Defendants Executive Directors Jane and/or John Doe(s) ~~and Williams, Frank, Owens~~ _at H_ and Jane and/or John Doe(s) failure to implement policy and procedures to allow ~~offenders that are~~ _Plaintiff_ sight impaired (legally blind) to have access to computers that meet ~~their~~ _her_ needs as Plaintiff cannot use a lap top must have a desk top with full keyboard due to hand impairment. Can't read events posted on TV-Tiller (can't read normal size print) therefore Plaintiff is denied access to programs, services and activities allowed to sighted offenders. Disparate treatment. See Exhibit-23 Program in gym wall outside.

(116) Plaintiff alleges CDOC is behind the times and is hindering court access and is not current with technology. See Ed Ramey's letter

_18_

**Claim** _6_ Denial of access to the court:

(116) ( ⌐ )  Plaintiff printed in the DWCF law library her 1983 Civil Rights Action regarding 2023 Passover 1st Amendment Violations and 1983 Civil Rights Action regarding being sexually assaulted on 20/31/21 by DWCF Sgt. Josh Lang but these documents never reached the U.S. District Court.

(117) ( ⌐ ) The DWCF mail room has no record of Plaintiff signing legal log document(s) for these two Legal Documents.

(118) ( ⌐ )  Plaintiff alleges she filled out the legal mail form(s) required by CDOC for sending out legal mail correctly and then watched as DWCF staff member sign and deposit into unit mail.

> (A )  Staff member, Mr. Graham filled out the legal log form(s) (one for 1983 Passover and the other for staff sexual abuse) after Plaintiff signed and dated the legal log(s);
> (B )  Staff member, Mr. Graham put said legal log(s) with manila envelope(s) attached with a rubber band into the legal mail cardboard box sitting at the door to Unit 2 office.
> ( C )  Plaintiff showed Mr. Graham her legal documents and the exhibits attached for both 1983 Civil Rights action. Mr. Graham remembers Plaintiff showing him her 1983 legal action complaint(s) and exhibits but per CDOC rules cannot sign an affidavit but stated would testify if subpoenaed for trial.
> (D )  Plaintiff alleges she has a habit of show staff what legal documents/mail she is sending and why when sending out legal mail.
> ( E )  Plaintiff alleges she put 10 stamps on one 1983 and 12 stamps on the other 1983 Civil Rights action.

(119) ( ⌐ )  Plaintiff has not received anything back from the US District Court regarding 1983 Civil Rights Motion for 2023 Passover Violations 1983 Civil Rights Motion regarding being sexually assaulted by DWCF Sgt. Josh Lang on 10/31/21.

(120) ( )  Plaintiff's 1983 Civil Rights Motion on staff sexual assault by DWCF Sgt. Josh Lang on 10/31/21 is critical as there is a 2 year deadline and this must be received by the court.

(121) ( ⌐ )  Plaintiff submitted a 3 page TRO (see Exhibit __ for denial to be printed stating, "Your 1983 has not been filed w/USDC as of today 6/21/23. Once your complaint has been filed you may resubmit wit that case number.") Laws librarian printed the TRO after considering facts on _____ see also Exhibit___.

> (a)  Plaintiff alleges Court not receiving her legal mail hinders her ability to access the court as she has no control over if or when her legal mail goes out. See above where she is resubmitting 1983 Civil Rights Claim and Intent to Sue by certified mail to the U. S. District Court therefore she will have a record dated _____.

(122)

> (b)  Plaintiff will suffer irreparable harm because she cannot the TRO to the court for court to take action as Plaintiff is a diabetic.

(123)

> (c)  Plaintiff alleges clerk has no right to deny Plaintiff Motion as Plaintiff has obeyed Rule 65 for Injunctive Relief and will suffer further retaliation and possible injury since Plaintiff is a diabetic.

(124)

(125) ( )  Per Rule 65 Injunction and Restraining Order Plaintiff must allege specific facts which she has especially since eating is the primary means of controlling her diabetes-missing even one meal is can be serious and life threatening.

~~( )  Plaintiff will suffer irreparable injury (actual physical injury) and irreparable injury, loss, and /or damage will result to Plaintiff before the adverse party can be heard in opposition~~

/9

(4)

**Claim 5** This claim includes Plaintiff's sexual abuse at La Vista Correctional Facility (LVDF) by Michael Dussart (2009/10) which this court ruled "without prejudice". Plaintiff could not serve LVCF staff member rapist Michael Dussart because CDOC/LVCF investigators refused to provide address for Dussart and sent Plaintiff out of state in an attempt to stop said law suit just days after Plaintiff filed law suit. Plaintiff alleges the court did not consider the following exhibits that showed Plaintiff presented evidence that she did report **she was the sexual abuse victim** and that Defendant Investigator Hougnon did have knowledge that she was the victim of staff sexual abuse by LVCV rapist Michael Dussart. The court did not consider defendant Investigator Collin Carson's deposition and statements:

(126) Per Exhibit 23 case # 1:12-cv-00609-WYD-MJW Document 465 filed 3/29/16 page 24 of 32 where Judge stated, "While I find Plaintiff's allegations of sexual assault credible, I cannot find that the record satisfies the subjective standard of an Eighth Amendment claim. There is simply no evidence that Defendant Hougnon knew that plaintiff was at a substantial risk of harm."

(127) Exhibit 24 refutes this statement, Exhibit 24 (1:12 cv-00609-WYD-MJW Document 41903 Filed 10/29/13 Page 24) letter to CDOC Executive Director Zavaras dated 1-19-10 over 5 months prior to filing law suit; which states at bottom of page beginning of hand written, "I have sperm from my LVCF rape, I am not safe telling, he will hurt me, kill my loved ones. I am not strong enough to fight CDOC in court."

(129) Plaintiff alleges obviously Hougnon did not follow protocol or proper procedures because there were no tape recording of any of the over 12 meetings he had with Plaintiff. Unlike the Carson investigation of Officer Shackleton where all offenders were tape recorded which is standard for interviewing.

(130) This court needed only to look at the deposition of DWCF investigator Collin Carson of 2/20/13 where investigator Collin Carson **refutes** Investigator Hougnon statement that Plaintiff did not give him sperm/body fluids by stating that Hougnon obviously told Carson Plaintiff had given him sperm/body fluids.  Exhibit ___.

(131) While on the subject of sperm from LVCF rapist Dussart, See *Exhibit 25*, deposition for DWCF IG investigator Collin Carson (CC) dated 2/20/2015 stating, "CC **328 apparently gave you some type of sperm or some type of body fluid from him that Mr. Hougnon got.**"

(132) And lines 15 through 21 where investigator Carson stated, "What I remember Ms. Coit only gave the number 328 in regards to this offender and claimed that this offender had been sexually assaulted by the staff member on numerous occasions and this offender---- the staff member had told the offender **that he would harm her family** if she didn't provide sex for that staff remember, from what I remember."

(133) See *Exhibit__* dated 7/3/10 where Plaintiff attempted to preserve rapist Dussart's semen evidence by mailing it to the U. S. District court, exhibit states, "On the date of July 31, 2020, investigator Carson received information via email that inmate Jill Coit had attempted to send out a letter to the US District Court in Denver. Inmate Coit claimed the letter contained a coffee filter which had been contaminated with semen … Plaintiff alleges sexual assault occurred at LVCF not DWCF.

(134) Plaintiff alleges she was transferred to LVCF because CDOC/DWCF administration feared staff retaliation for Plaintiff assisting offenders in reporting staff sexual misconduct/rape. **See Carson's deposition of 2/20/20.**

(135) See Exhibit__ document 419 /filed 10/29/13 Page 3 of 67 (E) "Defendant Hougnon admits Plaintiff told him the LVCF rapist was 6 feet tall, was in the military, was a former police officer (see /Defendants; Notion for Summary Judgment-(DMFSJ) page 11 number 65 (assailant was a staff member who had been in the military, who was approximately 6 feet tall, and had been a police officer"). Hougnon admits on page 14 # 89- that he was "operating under the assumptions the allegations Plaintiff was making were credible."

(135) See Defendant Hougnon's Response to Plaintiff's first request for Admissions, page 4, Response 14, "Hougnon admits Plaintiff told him that the LVCF rapist was 6 feet tall, white"

(136) Plaintiff has already identified why she could not come forward "because Dussart threatened to kill her granddaughter". Add in the fact that when Plaintiff's 80 year (step) mother visited Plaintiff at LVCF, Dussart

2 0

tried to pick her up when she was walking from the restaurant to motel. This newest threat forced Plaintiff to file law suit in June 2010, she had no choice.

(137) (139) The court needs only to look at Exhibit ___ Plaintiff's letter dated 1-16-10 at the bottom when Plaintiff wrote, **"I have sperm from my LVCF rape. I am not safe, he will hurt me, kill my loved ones. I am not strong enough to fight CDOC in court."**

(138) Remember Plaintiff wrote to CDOC Executive Director Mr. Zavaras 6 months before she filed legal action on LVCF rape by staff member Michael Dussart.

(139) (139) See *Exhibit 28* the US Court of Appeals Clerk of Court letter dated January 11, 2010 (6 months before Plaintiff filed law suit) stating, "Dear Ms. Coit, Your letter to Judge Mc Kay, which we received January 8, was referred to me for a response. As you know you no longer have any matters open in the Court of Appeals. I am sorry to say, but neither the court nor any of the judges individually ma6y take action if cases not directly before it or them by way of appeal or other proceedings. As a result, Judge Mc Kay cannot become involved in the matters you have raised. It appears you may need to contact the appropriate law enforcement agency. **I apologize that we cannot be of greater assistance**, Very truly yours, Elizabeth A. Shumaker, Clerk of Court"

(140) Plaintiff alleges it is a sad state when a rape victim cannot get rape stopped or helped even when writing the U.S. District Court judge begging to get rapes stopped; especially since she was not asking for money and did not want to file a law suit.

(141) Plaintiff then wrote a letter to the U.S. District Court **dated 2-4-10** regarding letter she received from Deputy Clerk. *Exhibit 29* stating, "Re: Personal and confidential letter sent to Judge Ebel regarding Sexual misconduct in CDOC." "Dear Deputy Clerk, It would really help if you would sign your name so that I could read your name..." Line 12, **"She does not want money but just does not want to be punished or retaliated against.**

(142) Plaintiff alleges she again wrote the U. S. District Court a letter dated June 25, 2010 *Exhibit 30* which the court gave a number to: 10-Cv-1555 titled, "MOTION FOR RETURN OF LEGAL DOCUMENT/LETTER I SENT TO JUDGE EBBEL" - Third paragraph Plaintiff writes, **"This is ludicrous that we must file a law suit to get rape stopped. What the court does not understand is that this officer is threatening to hurt her family if she tells.** And last line of paragraph, It took them 10 years and the Appeals court to admit knowing I had been raped". Exhibit 31

(143) Plaintiff alleges CDOC -OIG Instigators are not properly trained and do not follow procedures.

(144) This court did not consider the deposition of DWCF investigator Collin Carson when they made this ruling.

(145) **Plaintiff alleges she does not have the full deposition of Collin Carson taken on 2/30/15 that is relevant because Captain Mestas took this and several legal documents from legal box when shook down cell on 4/18/22 as retaliation for telling her on 4-15-21 that she had been sexually assaulted by DWCF Sgt. Josh Lang. Captain Mestas took all of Coit's property on 4-18-21.**

(146) Plaintiff alleges her wrists were injured in CWCF when she was brutally raped and beaten by Sgt. Joseph Smith see *Exhibit* ___ at bottom of page #$^2$ which the Appeals court ruled on April 7, 2006, stating, **"She alleged that Smith had access to her and continued to assault her while she was in segregation and while she worked in the prison library, where she was sent after segregation and that the abuse continued for another year until the defendants were forced into action by the involvement of a prison guard. These allegations are not inconsistent with the uncontroverted facts relied upon by defendants' motion for summary judgment."**

(A) It took Plaintiff from 1997 to 2006 for the Court of Appeals to rule Plaintiff has been raped see *Exhibit* first paragraph stating, "Here, the defendants' motion did not negate Ms. Coit's claim of deliberate indifference as found by the district court. The motion showed only that (1) Major Bohm took action to

203

2 1

Continuation of # 146, "Protect Ms. Coit and (2) eventually Smith was caught and removed from CWCF. Neither of these necessarily foreclose the possibility to Ms. Coit's plight." [2]

(B) Defendant Stancil and Jane and/or John Doe(s) failed to implement policy to keep evidence of alleged body fluids-semen from staff rapist safe (Dussart -LVCF) so it can be tested by the court. Exhibit ___ depostion from Collin Carson stating Plaintiff turned over body fluids and Exhibit ___ where Plaintiff tried to mail rapist Dussart's sperm to U. S. District Court.

Claim ___ 5 Miscellaneous claims that show violations:

(47) Dr. Shankar emailed Dr. Maul numerous times regarding Plaintiff's mental and physical health problems and Dr. Maul ignored or disregarded Dr. Shankar.

(48) Plaintiff mailed numerous documents and letters to Dr. Maul and never received a response. Plaintiff does not know if Dr. Maul received said mailings but with Dr. Shankar's reports, Dr. Maul had knowledge of Plaintiff's issues and the deliberate indifference shown by HSA Price and medical.

(49) Plaintiff has filed separate 1983 law suit regarding Passover violations of 2023 and Passover 2022 ; with Special diet allegations regarding intent to harm by HSA Price, N. P. Reilly and Jane and/or John Doe(s).

(50) Plaintiff has filed separate 1983 law suit regarding not meeting her blind (and being legally blind) needs and not following the class action of Mackes and the National Foundation for the blind in Colorado.

(51) In the even these two law suits facts are mentioned they do not take away from these two separate legal actions but were just mentioned to give the court a view of what has happened to Plaintiff.

(52) Plaintiff alleges CDOC Administrative Defendants at HQ and DWCF Administrative Defendants had knowledge as well as Jane and John Doe(s) that Plaintiff was not safe at Denver Women's Correctional Facility but kept her there anyway.

(53) Now with this legal action, Plaintiff should be safe as those mentioned in this action will have notice that harassing, retaliation and intimidation will not be allowed .

(54) Plaintiff request a restraining order or give notice to all defendants that they are not to harass, intimidate, threaten or retaliate against plaintiff or to take any of her property listed on property sheet or medical sheet prior to 6/13/23 HSA Price revoking Plaintiff medical accommodations or equipment.

(55) Plaintiff alleges what this court does not realize is that not only are offenders subject to sexual harassment/rape from male correctional officers but it appears DWCF female correctional staff are also subjecting offenders to sexual harassment and retaliation for rejection as DWCF female staff are homosexual. Plaintiff alleges that female staff at DWCF are 80% homosexuals or have or are in a homosexual relationship.

22

Claim _____ Legal mail not reaching the court.

( 156 )   Plaintiff filed an 1983 Civil Rights claim on being sexually abused by Sgt. Josh Lang on 10/31/21 (Exhibit ___ copy of Law library copy request showing 1983 Civil Right being printed) ~~and for 2022 Passover 1st Amendment Violations Exhibit ___ copy of Law library copy request for printing of 1983~~;

( 157 )   Plaintiff alleges neither of these legal motions/documents reached this court despite being logged into DWCF legal mail log. *Mr. Graham now ms. Waldrop are defendents.*

    ( A )  Plaintiff filed both according to CDOC Administrative Regulations and unit officer Mr. Graham remembers Plaintiff discussing what was being filed when he entered his name into the 2 legal logs. Mr. Graham is not allowed per CDOC policy to give Plaintiff an affidavit however Plaintiff has requested from her OIG Victim's rights advocate, Ms. Kelly Walddrop that she get a statement from Mr. Graham.

    ( B )   According to the mail room they never received 2 legal mail logs with manila envelopes addressed to the US District Court. Coit entered 1983 Civil Right on legal log and reason.

( 158 )   Plaintiff has filed a grievance that Legal mail nor regular mail is secure because it is kept in an open box next to the unit door where offenders can put mail into or out of. DWCF discontinued having the official blue metal mail boxes for offender mail when an offender(s) deposited fecal matter into the mail box.

( 159 )   Other offenders have complained that their legal mail to the court and attorneys were never received.

**( 160 ) Plaintiff request that this honorable court allow Plaintiff's case manager Ms. Shelton to email her motion(s) to the court so this does not continue to happen.**

( 161 )   Plaintiff lives on state pay of less than $10.00 per month and cannot afford to continue to pay postage and for copies, etc.

( 162 )   Plaintiff is 79 years old and not capable of representing herself due to the fact she is legally blind and cannot read normal size print therefore must have access to a computer that can enlarge print (she had former cell mate prepare her 1983); Plaintiff was just taken to Denver Health Eye Specialist, see report attached, Exhibit ___, yet AIC Janet Smith and Legal Director Jacobson-Sanchez refused to allow Plaintiff access to a computer so she can do mental health journaling, communicate and help relieve fear of being raped by staff again;

( 163 )   Plaintiff is confined to a wheel chair and has age related dementia, and MRI shows White Matter Disease of the Brain which affects balance as well other serious medical problems. Her diabetes also affects her ability to walk, talk and balance when she eats foods that make her sick. She also has a blocked artery to the heart and C DOC refuses to send her to cardiologist despite numerous specials recommendations. Plaintiff is on diabetic medication called Actos.

( 164 )   Plaintiff alleges these are exceptional circumstances and conditions and will likely suffer irreparable harm (unfixable damage as diabetes is a serious medical condition especially since Plaintiff had COVID in 2022 and is still suffering from that illness (with double vision as well as blurred vision and even hearing is worse).

( 165 ) The threat of harm is greater than the harm the defendant(s) will face should the court grant the ~~TRO and/or Preliminary Injunction.~~ *relief*

( 166 )   Plaintiff will win these actions once 1983 is adjudicated in the court by jury as evidence is overwhelming for these violations.

~~Plaintiff prays the honorable court grant a Temporary Restraining Order and/or Injunction for all the reasons listed above especially so the court can receive her legal documents and so she can get her~~

23

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? _X_ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):    The Colorado Department of Corrections

Docket number and court:    1st Law suit in CWCF CAnon City raped/beaten

By Sgt. Joseph Smith Don't have paper work/legal documents Captain
Claims raised: Mestas took my legal documents on 4/18/21 when took all
my property. But do have the Appelant Court  Case Number 05-1045
Judge Mc Kay April 7, 2006 one page see attached  ex 1

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?) 2nd law suit again raped by CDOC staff—
Michael Dussart at LVCF case number 1:12 cv-00609 WYD-mjw  see

Reasons for dismissal, if dismissed:  attached ex 2 dismissed without prejudice
Michael Dussart and Jane/John Doe(s) #2 & #3.

Result on appeal, if appealed: I sent in appeal but it never reached the courts

My claims are inlcuded in this law suit as it was filed wiothout
Prejudice ( regarding LVCF claims)

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

_X_ Yes ___ No (*check one*)  I exhaused all remidies that were available
but remember i am blind with hand impairment so could not read some
Did you exhaust administrative remedies?      grievances & did not have access
to computer some times and am blind so depended on other to type for me
_X_ Yes ___ No (*check one*)

24

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

See attached Page for Request For Relief

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

____10 / 19 / 23____
(Date)

*Certificate of Mailing - I swear under the penalty of perjury I placed this motor in the NCCF mail room for legal mail postage prepaid* (Revised November 2022) *on - 10 - 19 - 23 - to the US District Court - 901 19th Street, Denver Co 80294 and to the attorney General's office - 1300 Broadway, 10th floor Denver Co 80203. on - 10 - 19 - 23 _____ 26530.    ( 30 pages )*

REQUESTED RELIEF for being sexually assaulted for the third time by CDOC staff member. This assault occurred on10/31/21 by Sgt. Josh Lang and for the retaliation, deliberate indifference to serious medical needs, not following specialist recommendations as there is not anyone qualified to overrule specialist or treat my medical needs and for being denial accommodations of Mackes Class Action accommodations and freedom to practice my sincerely held religious beliefs (continual Passover violations, etc.) and mental health needs.

I want a Jury Trial and at least 8.25 million like what was awarded to Colorado offender Peatinna Biggs who was an at-risk-adult. I want my part of this **money to go to charities of my choice** (my attorney gets 50% of what is awarded) and for CDOC to give me 10 accommodations of my choice to assist with my (disability and mental health) needs. I am and have been for years an at-risk-adult. Not only was I aged 77 when sexual assault and drugged happen but I am in a wheel chair, blind and was legally blind at the time; I am a diabetic, have asthma, have hand, foot and back impairments/disabilities, am hearing impaired with many documented physical impairments/ disabilities and since 2008 ultra sound revealed have blocked artery to the heart but CDOC refuses to send me to Cardiologist till second week of October 2023. My mental health condition due to being repeatedly beaten and sexually assaulted by CDOC staff is fragile and I am having problems finding a reason to live. I am in constant physical pain and suffer continual and ongoing harassment and retaliation for reporting staff sexual abuse.

This very court has ruled I have been sexually assaulted by 2 prior CDOC staff members: Sgt. Joseph Smith at CWCF in Canon City and by Michael Dussart at La Vista Correctional Facility in Pueblo. Both time the court ruled CDOC was not responsible but under the **Aided-in-Agency theory** CDOC is responsible because rapist Sgt. Lang was being counseled for being "too familiar with offenders" but kitchen Captain Cerbo refused to report him to OIG for investigation. If Cerbo had done her job according to PREA and CDOC's own rules and regulation Sgt Lang would not have been employed as he was also allegedly supplying the drug Fentanyl to offenders for sex. Sgt. Lang only had access to me because of his position at DWCF/ CDOC. On top of that CDOC had notice I was not safe at Denver Women's Correctional Facility (DWCF) in Denver, Colorado but continued to house me at DWCF even though they had knowledge of staff retaliation.

I am "blind" with vision of 20/200 thus qualify for accommodations under the Mackes Class Action (Janet Smith and A. Jacobson-Sanchez continue to deny me accommodations) and CDOC has refused to meet my blindness needs. I will be 80 at my next birthday. In the event that I am driven to commit suicide, I want CDOC to be responsible for at least the 8.25 million for my being sexually abused/raped by staff, harassed, discriminated, retaliated against and being denied the right to practice my sincerely held religious beliefs and tenets of Judaism. I am not even allowed ice in my cell for my swollen hands, shoulder, knees, back/spine and loose/defective Stryler protheses of right hip. Even the dogs at DWCF are allowed ice. I can no longer take HSA Price and Cullford's denial of medical appliances/aids/ equipment, Captain Mestas taking my medication that was required prior to surgery and taking property listed on my property sheet, harassment and medical denial of seeing medical specialist for documented medical needs. I am in constant physical and emotional pain. I want the harassment to stop and to not be transferred out of state unless I select the state and for my property not to be taken from me.

Because I did not think I could handle the stress, retaliation and harassment filing a 3rd law suit on sexual abuse/rape by staff (it does not matter that I have sperm/semen because as deposition for OIG investigator Collin Carson stated, I turned over body fluids of Dussart but DOC told the court they were missing and did not even bother to offer an explanation on why they were not there for court testing when they were supposed to be locked up in a secure lock box). Never again will I turn over anything important to DOC for safe keeping. I offered CDOC the option of settling this law suit and wanted to select 3 out of the state of Colorado facilities with DOC paying a penalty until I was housed at my first selected facility with CDOC

obligated for Attachment A and Exhibit 1. This would have not cost CDOC or actually the tax payers not very much at all but I was told since it cost DOC nothing to lose a law suit they ignored my offer and continue to retaliate.

I would like for the law firm of Ms. Jane H. Fisher to handle my sexual abuse discrimination/ retaliation claims. I would like her to file a law suit for defendants listed above pushing me to suicide when my death could have been prevented. These defendants pushed me to the point of ending my life by ignoring serious medical problems and not sending me to specialist or obeying specialist orders and thus exacerbating my death and/or medical condition. I want Ms. Jane Fisher to handle my death as CDOC had numerous documents documenting my wanting to end my life due to hopelessness, helplessness and being in severe pain with DWCF and CDOC showing deliberate indifference. I have no reason to live being in constant pain and being harassed and denied appliances and even ice in my unit that I need to help with pain. Want at least 20 million with 50% of my portion to be donated to charities, DWCF staff that was kind to me, two offenders that tried to help me and to other persons. The other 50% will go to law firm she selects to clear my name as I did not commit the murder of Gerald Boggs, nor was I in Steamboat Springs the date of his death; the only evidenced presented at my trial that stated I was in Steamboat Springs, Colorado the day of his death was from his attorney Vance Halverson stated that he saw my red car (Toyota). But my red car was locked behind a 6-foot fence at Greeley Toyota the week before and I did not pick it up till at least 5 days after Boggs death. So, Halverson lied, he could not have seen my car in Steamboat Springs. I did not murder anyone, nor did I hire anyone to commit murder. I had already moved on with my life and married a childhood friend. Had no reason to murder Boggs even though he lied and claimed I gave him a 'Quick Claim' deed to my bed and breakfast. I never gave anyone a deed to Oak Street Bed and Breakfast. I was not even allowed to go to this fake dirty trial as I was in Steamboat jail and not notified. I want my name cleared and for any money not used for clearing my name to go to charities.

Respectfully submitted by Jill Coit #86530, Unit 2 D-1210, DWCF P. O. Box 392005, Denver, Colorado, 80239

FIRST CLASS MAIL

US POSTAGE $010.55

neopost
10/19/2023
ZIP 80216
041L12205053

CERTIFIED MAIL

7008 0150 0001 7353 5595

20 WCF
Of W Cont #653 - UJJJ-U-120
P.O. Box 392005
Denver CO 80~38

Clerk of Court - Room A105
U.S. District Court
901 - 19th Street
Denver, CO 80294 - 3589



COLORADO DEPARTMENT OF CORRECTIONS
DENVER WOMENS CORRECTIONAL FACILITY
OFFENDER MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE